IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| **JUAN GALINDO, Individually and On Behalf of All Others Similarly Situated,** § § § | | |
| **Plaintiff,** § | Civil Action No. | |
| § | | |
| **v.** § | 7:18-cv-00069 | |
| § | | |
| **LAFAYETTE STEEL ERECTOR, INC. d/b/a LSE CRANE AND TRANSPORTATION,** § § § § § | | |
| **Defendant.** § | | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Juan Galindo ("Named Plaintiff") on behalf of himself and all others similarly situated ("Class Members" herein) (Named Plaintiff and Class Members are collectively referred to herein as "Plaintiffs") bring this Fair Labor Standards Act ("FLSA") suit against the above-named Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended. They show as follows:

### I. NATURE OF SUIT

1. The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Defendant Lafayette Steel Erector, Inc. ("Defendant") has violated the FLSA by failing to pay its operators and riggers in accordance with the guarantees and protections of the FLSA. Specifically, Defendant pays its operators and riggers a "per diem" that it pays on an hourly basis ("Hourly Per Diem") as a scheme to avoid paying overtime on all of Plaintiffs' wages. When calculating Plaintiffs' regular rate of pay, Defendant does not include the Hourly Per Diem in the calculation. Defendant also refuses to pay Plaintiffs for their drive time from Defendant's yard to and from the various oilfield jobsites, even though Plaintiffs perform work for Defendant before, during, and after the driving time. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendant's compensation policies, Named Plaintiff brings this action as a collective action pursuant to 29 U.S.C. § 216(b).

## II. PARTIES

3. Named Plaintiff Juan Galindo is an individual who resides in Maverick County, Texas and was employed by Defendant within the meaning of the FLSA. Named Plaintiff was employed by Defendant from 2014 until 2018. He has consented to be a party-plaintiff in this action and his consent form is attached hereto as "Exhibit A."

4. The Named Plaintiff and Class Members are Defendant's current and former operators and riggers who worked as such for Defendant.

5. Defendant Lafayette Steel Erector, Inc. is a foreign corporation that is authorized to do business in Texas and that is doing business in Texas. Defendant does business as LSE Crane and Transportation. Defendant maintains its principal office in Lafayette, Louisiana and may be served with process by service on its registered agent for service, Jacob Gaspard, 4002 Roma Street, Odessa, Texas 79765.

### III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law. Specifically, Plaintiffs assert claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. All or a substantial part of the events forming the basis of this suit occurred in Midland County and Ector County, Texas, both of which are in this District and Division. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b). Named Plaintiff Galindo was an employee of Defendant and performed work for Defendant in Ector County and Midland County, Texas. Defendant does business and maintains an office in Ector County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Defendant thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b)(1).

### IV. COVERAGE UNDER THE FLSA

8. At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiff and the Class Members.

9. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all times hereinafter mentioned, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11. At all times hereinafter mentioned Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29

U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12. At all times hereinafter mentioned, Named Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. FACTUAL ALLEGATIONS

13. Defendant is an oilfield services company that provides staffed crane rentals throughout the Permian Basin, including in Midland County and Ector County. Along with the crane, Defendant provides personnel to operate the crane, including operators and riggers.

14. Defendant has a yard in Odessa, Texas. At the yard, Defendant maintains a shop and an office.

15. Named Plaintiff worked as a crane operator for Defendant from approximately June, 2014 until March, 2018.

16. Named Plaintiff was employed by Defendant as a crane operator and was responsible for operating a crane at various oil and gas exploration job sites in and around the Permian Basin, including in Ector County and Midland County, Texas. The Class Members who held the rigger job title assisted the crane operators in the operation of the crane by being on the ground during and communicating with the crane operator about the operation of the crane. The Class Members are employed in all of the Defendant's locations.

17. In the performance of their work, Plaintiffs handle tools, equipment, and other materials that were manufactured outside of the State of Texas.

18. For all times relevant to this action, as operators and riggers, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work. The Plaintiffs' primary job duty is not the performance of office or non-manual work directly related to Defendant's management or general business operations or those of its customers.

19. The job duties of the operators and riggers at each of the Defendant's locations was and is essentially the same. As a result, each operator and rigger performed the same or similar job duties throughout Defendant's operations.

20. The daily and weekly activities of Plaintiffs were routine and largely governed by standardized plans, procedures, and checklists created by Defendant. Virtually every job function was predetermined by Defendant, including the data to compile and schedule of work and related work duties. The Plaintiffs were prohibited from varying their job duties outside of the predetermined parameters.

21. Plaintiffs did not direct the work of two or more employees at any time during their employment as operators or riggers. Plaintiffs did not have the authority to hire or fire other employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

22. Plaintiffs did not perform work that required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; and they do not perform work in a recognized field of artistic or creative endeavor.

23. At all times relevant to this action, Defendant did not engage in the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce. In addition,

Plaintiffs did not operate a motor vehicle transporting goods or persons in interstate commerce, and they could not reasonably have been expected to do so. Further, Plaintiffs were not, as part of their job duties of operator or rigger for the Defendant, required to complete documents or other paperwork in order to comply with United States Department of Transportation ("DOT") regulations. More specifically, as part of their job duties, Plaintiffs were not required to complete DOT vehicle inspection reports or other DOT forms. In addition, in order to hold their operator or rigger job with Defendant, Plaintiffs were not required to pass DOT written or driving tests.

24. Defendant did not pay Named Plaintiff or Class Members on a salary or a fee basis pursuant to 29 C.F.R. §541.600. Instead, Defendant paid Named Plaintiff and Class Members on an hourly basis.

25. Defendant's operators and riggers are FLSA non-exempt positions.

26. Named Plaintiff and Class Members worked long hours. Named Plaintiff typically worked at least twelve hours per day and approximately ninety hours per week. Named Plaintiff and Class Members also frequently worked thirty-six hours shifts. During all times relevant to this action, in weeks in which they work, Plaintiffs routinely worked more than forty hours per week. Defendant paid Named Plaintiff and Class Members a daily per diem and the Hourly Per Diem. Defendant paid the daily per diem for any days on which the Plaintiff or Class Members performed work. The Hourly Per Diem was an hourly rate that was multiplied by the number of hours the Named Plaintiff and Class Members worked in a workweek.

27. The total amount paid for the Hourly Per Diem varied based on the number of hours Plaintiffs worked. The Hourly Per Diem was not based on or related to Plaintiffs' reimbursable expenses.

28. In calculating Named Plaintiff and Class Members' overtime compensation, Defendant had a policy and practice of not including the Hourly Per Diem in the calculation of their regular rates of pay.

29. Defendant's policy and practice of failing to include the Hourly Per Diem in calculating Plaintiffs' regular rate of pay violates the FLSA. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041-42 (5th Cir. 2010).

30. Named Plaintiff and many Class Members often lived temporarily on Defendant's premises at its Odessa yard. At its Odessa yard, Defendant provided three bedrooms on the second floor of its shop; approximately ten, one-bedroom RVs; and one four-bedroom mobile home, all for use by Named Plaintiff and Class Members. Named Plaintiff's permanent residence is in Eagle Pass but, during his employment with Defendant, lived at Defendant's Odessa yard in a one-bedroom RV owned by Defendant.

31. Including Named Plaintiff, approximately 15-18 Class Members resided on Defendant's premises at any given time.

32. On each workday, Named Plaintiff and Class Members drove company-provided vehicles from Defendant's yard to various oilfield sites, and then they drove back to Defendant's yard following the day's work. For the first three years of his employment, Named Plaintiff drove a Chevy Silverado 1500 pick-up truck, which had a gross vehicle weight rating of less than 10,000 pounds. During approximately the last year of his employment, Named Plaintiff drove a 2017 Ford F250, which also had a gross vehicle weight rating of less than 10,000 pounds. Approximately once per month, Named Plaintiff drove these company vehicles between job sites during the work day and was compensated for this time.

33. In the course of the Named Plaintiff's and Class Members' work for Defendants, they operated one or more trucks weighing 10,000 pounds or less.

34. Named Plaintiff and Class Members were not permitted to drive their personal vehicles to and from the job sites. Instead, they were required to drive Defendant's vehicles to the jobsites.

35. Before driving to the jobsites each day, and while still at Defendant's Odessa yard, Named Plaintiff and Class Members commenced working at the yard. More specifically, they selected and loaded in the trucks supplies and materials, including lubricant, grease, cleaning agents, rags, degreaser, and strobe lights that they would need for the day's work. The Plaintiffs could not have performed their work at the job sites without having selected and loaded the necessary supplies and materials while at the yard. Accordingly, such work was integral and indispensable to Plaintiffs' principal activities for which Defendant employed and employs them. Approximately once per month after finishing his daily shift and driving back to Defendant's yard, Named Plaintiff turned in completed paperwork pertinent to the job site(s) where he had worked in the previous month. Plaintiffs' drive time the yard to the job site varied from 30 minutes to 2 hours or more each way.

36. Approximately two to three times per week, Named Plaintiff and Class Members would stop at gas stations to fill their company provided vehicles with fuel. Named Plaintiff and Class Members paid for the fuel using a company-provided fuel card. After Named Plaintiff did this, he typically continued driving approximately twenty to thirty minutes to the job site. The Plaintiffs could not have performed their work at the Defendant's customers' job sites without having filled their company provided vehicles with fuel.

37. Approximately once per week or once every two weeks, Named Plaintiff and Class Members would stop at gas stations to fill the supplemental fuel tanks (the "L tanks") located in the bed of their company-provided vehicles with diesel fuel. After Named Plaintiff did this, he typically drove approximately twenty to thirty minutes to the job site where they transferred the fuel from the L tanks to the crane. The Plaintiffs could not have performed their work at the Defendant's customers' job sites without having filled the L tanks on their company provided vehicles with fuel for the crane.

38. Named Plaintiff and Class Members were only compensated for their time on the actual job site; they were not paid for: (1) the time selecting and loading supplies and materials in the yard before their shifts; (2) their drive time to the job site while in their company vehicle; (3) their drive time from the fuel station to the job site after adding fuel to their company vehicles fuel; (4) their drive time from the fuel station to the job site after filling the L tanks on their company vehicles with diesel fuel for the cranes; or (5) their drive time from the job site back to the yard where they resided (collectively the "Drive Time").

39. In short, Plaintiffs performed work that was integral and indispensable to their primary activities at the yard and before leaving the shop for the worksite, during the drive to the worksite, and they continued performing work that was integral and indispensable to their principal activities upon their return from the worksite. Accordingly, such time was compensable under the FLSA.

40. Defendant had a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for anything other than the work performed at the customers' jobsites.

41. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for their Drive Time.

42. Defendant was aware that Plaintiffs were performing work outside of their recorded hours. But Defendant did not and does not compensate Named Plaintiff or Class Members for any Drive Time.

43. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for all overtime hours they worked.

44. Because, as indicated above, compensable Drive Time occurred in weeks where Plaintiffs were working more than forty hours, Defendant wholly failed to pay Plaintiffs at all, much less at an appropriate overtime rate, for the Drive Time.

45. Defendant has employed and is employing other individuals as operators and riggers who have performed the same job duties under the same pay provisions as Named Plaintiff, in that they have performed, or are performing, the same job duties, and have consistently worked in excess of forty hours in a workweek and:

    i. have been denied pay for Drive Time and thus overtime compensation at a rate of not less than one-and-one-half times their regular rates of pay; and

    ii. have been denied overtime pay that includes the Hourly Per Diem in the calculation of the regular rate of pay.

46. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Named Plaintiff and the Class Members.

## VI. COLLECTIVE ACTION ALLEGATIONS

47. Named Plaintiff and the Class Members performed the same or similar job duties as one another in that they worked as, and performed the duties of, an operators and riggers in Defendant's worksites in Texas. Further, Named Plaintiff and the Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek. More specifically, Defendant knowingly refused to pay Named Plaintiff and the Class Members for their Drive Time. Defendants also knowingly refused to include the Hourly Per Diem in calculating the regular rate of pay—and overtime rate—for Named Plaintiff and the Class Members' hours worked over forty in a workweek. Thus, the Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

48. Defendant's failure to compensate employees for hours worked in excess of 40 in a workweek as required by the FLSA results from a policy or practice of refusing to pay its operators or riggers for Drive Time and refusing to include the Hourly Per Diem when calculating Plaintiffs' regular rate of pay.  This policy or practice is/was applicable to the Named Plaintiff and all Class Members.  Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit.  Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all Class Members.  Accordingly, the "Class Members" are properly defined as:

> **All current and former employees of Defendant who were paid by the hour and (1) were paid an Hourly Per Diem, or (2) were not paid for their driving time in the last three years.**

### VII. CAUSE OF ACTION: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

49. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-one-half times their regular rates for which they were employed.  Defendant has acted willfully in failing to pay Plaintiff and the Class Members in accordance with applicable law.

### VIII. PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Named Plaintiff prays for an expedited order certifying a class and directing notice to putative class members pursuant to 29 U.S.C. § 216(b) and, individually, and on behalf of any and all such class members, on trial of this cause, judgment against Defendant as follows:

     a.     For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Plaintiffs (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who may join the suit);

     b.     For an Order awarding Plaintiffs (and those who may join in the suit) the taxable costs and allowable expenses of this action;

     c.     For an Order awarding Plaintiffs (and those who may join in the suit) attorneys' fees; and

     d.     For an Order awarding Plaintiffs (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

     e.     For an Order awarding Plaintiffs declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*; and

     f.     For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

                                             Respectfully Submitted,

                                             **MORELAND LAW FIRM, P.C.**
                                             The Commissioners House at Heritage Square
                                             2901 Bee Cave Road, Box L
                                             Austin, Texas 78746
                                             Tel: (512) 782-0567
                                             Fax: (512) 782-0605

                                             By:  */s/ Daniel A. Verrett*
                                                      Daniel A. Verrett
                                                      Texas State Bar No. 24075220
                                                      daniel@morelandlaw.com

                                             Edmond S. Moreland, Jr.
                                             State Bar No. 24002644

        edmond@morelandlaw.com
        700 West Summit Drive
        Wimberley, Texas 78676
        (512) 782-0567
        (512) 782-0605 - telecopier

        **ATTORNEYS FOR PLAINTIFF**